# EXHIBIT N

# ASSOCIATED METALLURGISTS

P. O. BOX 201 • NORMAN, OKLAHOMA • 73070 • 405 329 1423

June 8, 2015

# REPORT OF FINDINGS

## PREPARED TO CONFORM TO THE REQUIREMENTS OF RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE

In the matter of:

**TINA BLANKENSHIP AND MARK BLANKENSHIP**

**v.**

**WAL-MART STORES, INC. AND GENERAL ELECTRIC CO.**

Submitted to:

MICHAEL E. CARR
CARR & CARR
4416 SOUTH HARVARD AVENUE
TULSA, OK 74135

Robert Jay Block, Ph.D., P.E.
Consulting Metallurgical Engineer

# INTRODUCTION

Associated Metallurgists was retained by attorney, Michael E. Carr of the law firm, Carr & Carr, to analyze the cause of the accident that injured Tina Blankenship. The accident occurred on July 26, 2013 while Ms. Blankenship was attempting to chop zucchini (in preparation for making zucchini bread) using a General Electric Model No. 169203 food processor (the subject of this lawsuit). The machine had been purchased in June or July, 2010 at a Wal-Mart store and returned to the store after the accident. I am the principal investigator for Associated Metallurgists and the sole author of this report.

**Qualifications**

1. I am a Professor Emeritus of Metallurgical Engineering in the Department of Chemical Engineering and Materials Science and the College of Engineering at the University of Oklahoma.

2. I am a registered Professional Engineer, licensed to practice engineering in the State of Oklahoma.

3. I have a Bachelor of Science degree majoring in Metallurgy from the Massachusetts Institute of Technology, a Master of Science degree majoring in Metallurgical Engineering from Columbia University, and the Doctor of Philosophy degree, with a major in Metallurgical Engineering and minors in Physics and Chemistry from the University of Illinois (Urbana-Champaign).

4. My formal undergraduate and graduate education encompassed the uninterrupted time period beginning September 1952 through September 1963; and during that period of time as part of my undergraduate and graduate training, I took numerous introductory, advanced and graduate courses in mechanical engineering, electrical engineering, chemical engineering, physics, chemistry, mathematics, and other fields of science and engineering in addition to the courses in metallurgy, metallurgical engineering, materials science corrosion and corrosion control, all of which were offered to satisfy the degree requirements at the three institutions of higher education which I attended.

5. I had been a professor in the College of Engineering at the University of Oklahoma for more than twenty-seven years before attaining emeritus status and I taught courses that dealt directly with the principles and practice of engineering and mechanical design to students of mechanical engineering, metallurgical engineering and other engineering disciplines.

## INTRODUCTION (Contd.)

6.  On a continuing basis, I taught courses at the University of Oklahoma that included principles of engineering design and the courses were recognized as qualifying in their design content by the Engineering Council for Professional Development, the authority that was responsible for accrediting undergraduate engineering curricula.

7.  I originated and on a continuing basis, taught an upper division/graduate course entitled, Materials Selection and Failure Analysis, at the University of Oklahoma, that dealt directly with mechanical design and how to determine the causes of failures in metals, non-metallic components and mechanical assemblies. The majority of students that took that course were enrolled in the mechanical engineering curriculum.

8.  Throughout my more than fifty years as a practicing engineer, I have been consulted by a variety of corporations and companies to evaluate the adequacy of engineering designs. For a period of several years, I was the co-principal and then principal investigator on projects for the U.S. Air Force (OCOMA) that were titled, "Analysis of Failures in Aircraft Engine and Accessory Components." These projects involved the analysis of the design and function of the wide variety of mechanical components that found service in military aviation.

9.  Throughout my time as a practicing engineer, I have been actively involved, on a day-to-day basis, in engineering consulting to individuals, industry and attorneys. My experience includes engineering analyses of the design, materials, manufacture and warnings that apply to a large number and great variety of industrial machines, mechanical assemblies and products.

10. I have been qualified as an expert witness to give testimony regarding the principles and practice of engineering, mechanical design and failure analysis in federal and state courts in Oklahoma as well as other jurisdictions in the United States and my qualifications to offer testimony as an expert in engineering design have been specifically cited by Federal and Oklahoma state appeals courts. In reviewing my testimony in Miles v. Olin Corp. 922 F.2nd 1221 (5th Cir. 1991), (a case involving the failure of an internal part in a shotgun and the resulting accidental discharge of the firearm) the United States Court of Appeals, Fifth Circuit stated "Dr. Block's credentials to testify as an expert mechanical design engineer and metallurgist were well established; his findings were specific, detailed and

## INTRODUCTION (Contd.)

well documented, and Miles was unable to cast any doubt during his extended cross-examination on the reliability of Dr. Block's methodology."

11. In commenting upon my expertise and my university degrees majoring in metallurgy and metallurgical engineering, Judge Friot noted in <u>George v. Macro Engineering & Technology</u>, et al., Transcript of Daubert Motions, in the United States District Court for the Western District of Oklahoma, Case No. CIV-08-856-F, (2010 " ... after all the years that Dr. Block has been a practicing engineer, he has, to this Court's perception, developed expertise noticeably outside of the confines of the traditional field of metallurgy." (pg. 122.)

12. My curriculum vitae and a listing of the cases in which I have testified over the last four years are attached. My current rate for all work including testimony by deposition or at trial is $300.00 per hour. I charge at one-half rate for time involved with travel. This report summarizes the results of my analysis of the General Electric food processor Model No. 169203 and my testing of other Model No. 169203 food processors that have been involved in accidents similar to the accident that injured Ms. Blankenship.

13. The relevance of additional information obtained through ongoing further discovery and its impact upon my findings, conclusions and opinions will be considered in a supplementary report as may be required.

### Methodology

14. In reaching conclusions and forming opinions regarding the causes of the accident that injured Ms. Blankenship, I followed the protocols and procedures generally accepted and commonly used by experts in the field of accident investigation and product analysis. In each of those cases I studied documents provided by the defendants and conducted tests demonstrating that General Electric Model No. 169203 food processors were defective and capable of operating without the safety lid (covering the spinning blades) in place. This defect caused Ms. Blankenship's injuries and was the cause of a product recall by the Consumer Product Safety Commission (Release No 11-227, May 25, 2011).

15. The specific food processor that injured Ms. Blankenship in the present matter had been returned to Wal-Mart prior to the initiation of this

# INTRODUCTION (Contd.)

lawsuit and was unavailable for examination and testing. However, I reviewed her deposition testimony in which she described the circumstances of her accident. The failure that she described is the same failure of the Blade-Safety Interlock system that caused injuries to other users of General Electric Model No. 169203 food processors and specifically to Andrea Locke, Tyra Graham and Kristine Neese whose food processors I have examined and tested.

16. The General Electric food processors that were involved in the accidents that injured Ms. Locke, Ms. Neese, and Ms. Graham were examined, photographed and their operation documented by video recording. An exemplar General Electric food processor was also received, examined, photographed and disassembled in order to view, test and document operation of the internal devices that make up the Blade-Safety Interlock mechanism that is intended to prevent user injuries arising from accidental contact with the spinning blades. Examination and testing of those food processors and component parts followed the protocols and procedures generally accepted and commonly used by experts in accident investigation and the engineering analysis of accident causation. Those protocols and procedures were applied directly to the present matter and are more fully described below.

17. The documents produced in the Andrea Locke lawsuit were reviewed with consideration given to the circumstances of her accident. My prior review of those documents together with my current review of the documents produced in this lawsuit followed the protocols and procedures generally accepted and commonly used by experts in accident investigation and the engineering analysis of accident causation. The conclusions and opinions reached are given to a reasonable degree of engineering certainty and are based upon a body of knowledge and experience gained through the evaluation of an estimated one-thousand investigations and evaluations of injury-producing accidents conducted by Associated Metallurgists and the principal investigator over more than a fifty year span of teaching engineering to undergraduates and graduate students at the University of Oklahoma and consulting to individuals, companies and attorneys representing both plaintiffs and defendants.

**Circumstances of the Accident**

18. A description of the accident is provided in the deposition testimony of

# INTRODUCTION (Contd.)

Tina Blankenship given on April 23, 2015. Ms. Blankenship testified. "I was making zucchini bread and as I was reaching in to remove the blade, which I pushed down on it, it came on and cut my fingers." (p. 41/L. 18) She had processed one batch before the incident and had no problems (45/6). She was using the grate/chop blade (45/11) and was using the chop function on the machine control panel (46/5). After completing the first batch, she removed the lid (46/8), reached in and removed the blade (46/13), and removed the bowl from the food processor (46/12). She then rinsed out the bowl, put it back on the machine base and then put the blade back on the (spindle) stem (48/4, 8). After processing the second batch, she recognized "... a couple of chunks of zucchini that hadn't got mixed up." (49/10) "I took the lid off and reached my hand inside and then when I touched the blade, that's when it came on." (49/19). As a consequence of the unexpected operation of the food processor, Ms. Blankenship suffered injuries to the fingers of her right hand (52/14).

**Documents Reviewed**

19. In preparation for reaching conclusions and rendering my opinion in the above captioned case, I reviewed the following documents:

    a.    Instruction manual for the GE Food Processor,

    b.    Consumer Product Safety Commission Release #11-227, May 25, 2011,

    c.    Miscellaneous photographs describing the GE Model 169203 food processor,

    d.    The deposition testimony of Tina Blankenship (4/23/15),

    f.    Provisional Application for United States Patent, Processing Apparatus and Method (WM07853 – WM07896),

    g.    United States Patent No. 8,262,005 B2, Processing Apparatus and Method, Sept 11, 2012 (WM07897 – WM07909),

    h.    ANSI/UL 982: Standard for Motor-Operated Household Food Preparing Machines,

    i.    Letter from Wal-Mart attorney, Niki Cung to Plaintiff's attorney, Michael Carr in Locke v. Wal-Mart & G.E. (7/15/13),

    j.    Deposition Testimony of Robert Jay Block (Locke v. Wal-Mart & G.E., 2/21/14),

## INTRODUCTION (Contd.)

    k.    ASTM E-860: Standard Practice for Examination and Preparing Items that are or May Become Involved in Criminal or Civil Litigation.

20.   In reaching conclusions regarding the causes of the accident that injured Andrea Locke (prior to the Blankenship case) I studied confidential documents within the groupings of Bates-stamped documents shown below. These documents provided important information regarding the development of the Model 169203 General Electric/Wal-Mart food processor.

        GE00021 (4/3/2011) – GE02176 (10/26/2009),
        WM02039 (6/3/2009) – WM004491 (9/23/2010),
        WM04567 – WM04585,
        WM04593 – WM04595,
        WM04600 – WM04601,
        WM05533,
        WM05596 – WM05597,
        WM06015,
        WM06198 – WM06199,
        WM06388 – WM06390,
        WM06040 – WM06055,
        WM06395 – WM06397,
        WM07130 – WM07137,
        WM 07141,
        WM07215,
        WM07220,
        WM07230 – WM07231,
        WM07289,
        WM07350,
        WM07397 – WM07402,
        WM07437 – WM07439,
        WM07468 – WM07477.

The above-listed documents are equally applicable to my opinions about the food processor that is the subject of the Blankenship lawsuit and support my findings, conclusions and opinions.

## FINDINGS AND DISCUSSION

### Review of Documents

21.   Section 22 of the ANSI/UL Standard (cited above) requires the

## INTRODUCTION (Contd.)

manufacturer to protect the user against injury arising from the use and foreseeable misuse of the food processor. The design of the subject GE Food Processor was devised to incorporate a Blade-Safety Interlock that would prevent operation of the motor unless the bowl and lid were properly installed thereby preventing access to any of the spinning blades. However, the mechanism intended to execute the design failed in the subject, exemplar and other GE Food Processors to the extent that the entire line of products were subject to the CPSC recall.

22. Documents GE00165 – GE00168 (March 11, 2009) demonstrate that General Electric was aware nineteen months before Andrea Locke's injury (October 10, 2010), fifteen or sixteen months before purchase of Ms. Blankenship's unit and approximately twenty-seven months before her accident that, "If blade is inserted crooked while the unit is plugged in and "chop", "shred" or "dough has been pressed, unit will turn ON. This needs to be corrected." The documents describe the conditions that led to Ms. Blankenship's injury.

23. Documents GE01416 – GE01426 describe the recall undertaken by Wal-Mart and General Electric in concert with the CPSC and contain the statement, "The food processors were manufactured by Wal-Mart under a licensing agreement with GE."

24. Documents WM06395 – WM06397 address the probable cause of the defect that allows the unit to run unprotected by the Blade-Safety Interlock and the remedies being undertaken to address the defect. WM06396 also contains the following statements: "Actually 10 pcs out of 9000 pcs is only a bit over 0.1%. Therefore, we can see the risk is not so high." The statement evidences a reckless disregard and conscious indifference for the safety of users of the Wal-Mart-sold product.

25. Documents WM04593 – WM04595 present a timeline supplied by the Chinese supplier of the food processor. On July 27, 2009, approximately forty-eight months before Tina Blankenship's injury the supplier, Demeter, notes failure of the safety (interlock) in five units.

26. The bulk of the documents cited above reflect attempts by General Electric, Wal-Mart and its supplier Demeter to determine the cause of the defect in the food processors prior to the time the subject food processor

## INTRODUCTION (Contd.)

was manufactured and demonstrate knowledge on the part of those entities that defective units were currently in the stream of commerce or had been in the hands of consumers.

27. The letter from Niki Cung cited above fails to note the relevance of documents regarding other similar incidents and information regarding the defect subsequent to Andrea Locke's accident. However, the continuing presence of the defect extends beyond the date of Ms. Locke's or any other particular individual's injury and is relevant and potentially useful to an engineering analysis of the nature of the defect that was present in the subject unit and that caused Ms. Locke's and Ms. Blankenship's injuries.

## FINDINGS

### Preservation of the Evidence

28. The food Processor that was involved in Ms. Blankenship's accident was returned to Wal-Mart subsequent to the incident. In another similar case involving personal injury, Wal-Mart stated that returned food processors are destroyed. In following this policy, Wal-Mart violated the requirements of ASTM E 860 cited above, existing custom and practice and basic principles of fair play. The ASTM standard, which was originally approved in 1982 and subsequently reapproved in 1997 and again in 2006 predates production of the G.E. Model 169203 food processors that are the subject of this and other lawsuits.

29. The scope of ASTM E 860 contains the following language, "This practice sets forth guidelines for handling of items that may have been involved in a specific incident that is or is reasonably expected to be the subject of criminal or civil litigation." Their prior experience with lawsuits arising from products involved in accidents producing personal injury and specific experience with lawsuits involving G.E. Model 169203 food processors leaves little doubt that Wal-Mart knew or should have known that the Blankenship food processor was among the class of items that are or may become involved in criminal or civil litigation.

30. The standard outlines the responsibility of anyone who handles the evidence for preserving and maintaining its integrity so as not to preclude or adversely limit additional examination and testing. In disposing of the

## FINDINGS (Contd.)

Blankenship food processor, Wal-Mart violated the intent and specific language of the standard and by its actions precluded additional examination and testing of the evidence that plaintiff and this laboratory would have conducted and has conducted in other similar incidents involving personal injury arising from G.E. Model 169203 machine malfunction.

### Examination and Tests of G.E. Food Processors

31. The General Electric Model 169203 food processors that were involved in the Locke, Neese and Graham accidents, together with an exemplar of the food processors were examined and documented with photographs prior to testing. In each case, operation of the unit was tested and documented by video recording. It was found that the Blade-Safety Interlock system intended to prevent operation of the unit without the lid properly secured did not function. As a consequence, each of the tested units was found to be capable of operation without the lid properly installed and with the spinning blades accessible to the user.

32. The results of examination and tests of the food processors involved in the Locke, Neese and Graham injuries and the conclusions based upon those findings are contained in the following documents that have been submitted to the Carr & Carr law firm.

| CASE | DOCUMENT | DATE |
|---|---|---|
| Locke v. G.E. et al. | Report of Findings, Photos & Video | 6/12/13 |
|  | Rule 26 Report of findings | 2/3/14 |
|  | Report of Findings, Photos & Video | 1/29/14 |
| Neese v. G.E. et al. | Draft Preliminary Report of Findings, Photos & Video | 9/26/14 |
| Graham v. G.E. et al. | Draft Preliminary Report of Findings, Photos & Video | 10/7/14 |

### Examination and Tests of an Exemplar GE Food Processor

33. An exemplar General Electric Model 169203 food processor was received for examination and testing. The unit as received was inoperable. The portion of the base enclosure containing the control panel and spindle

# FINDINGS (Contd.)

was removed in order to expose the components of the Blade-Safety Interlock system. The wires leading to and from the micro-switch intended to allow operation of the motor only when the processor bowl lid is properly installed were connected to an ohmmeter in order to display continuity of the electrical circuit leading to the motor. Photographs and a video recording documenting the condition of the Blade-Safety Interlock and its operation are contained in "EXAMINATION AND TESTS OF AN EXEMPLAR AND FURTHER TESTS OF THE SUBJECT GE FOOD PROCESSORS" (Associated Metallurgists, January 29, 2014) appended to the Rule 26 Report of Findings in Locke.

34. It was found that the Blade-Safety Interlock system incorporated in the exemplar food processor was capable of allowing the food processor motor to operate (and spin the blades) without the lid properly in place when the entire central spindle was depressed (downward) by approximately 0.030 inches from its elevated (rest) position.

### Further Examination and Tests of the Locke GE Food Processor

35. Additional tests of the Locke General Electric food processor are contained in the DVD video recording appended to the February 3, 2014 Rule 26 Report in Locke. Without the food processor lid in place and with the spindle raised and released, the motor did not operate after depressing any of the CHOP, SHRED or DOUGH buttons on the control panel. However, when the spindle was subsequently depressed, simulating physical contact with the blade, the motor immediately began to operate turning the (spindle) stem and spinning the blades at a high rate of speed.

36. It was found that the Blade-Safety Interlock system incorporated in the Locke food processor was capable of allowing the food processor motor to operate (and spin the blades) without the lid properly in place when the entire central spindle was depressed (downward) by approximately 0.036 inches from its elevated (rest) position.

37. The tests conducted on the Locke General Electric Food processor demonstrated defective and dangerous operation that exactly duplicated the descriptions of the accident contained in Andrea Locke's and Tina Blankenship's deposition, further confirming the conclusions and opinions expressed in the June 12, 2013 Report of Findings (cited above).

# CONCLUSIONS AND OPINIONS

### Conclusions

38. The General Electric Model 169203 Food Processor that is the subject of this lawsuit could not be examined and tested because after it was returned to Wal-Mart it was destroyed by them in violation of ASTM E 860.

39  The description of the accident provided by Ms. Blankenship and her physical injuries demonstrate that the involved food processor was capable of operation without the lid properly installed thereby exposing the user to injury from the spinning blades.

40. The ability of the Blankenship food processor to operate without the lid in place was caused by the failure of the Blade-Safety Interlock system that was designed to prevent operation of the motor when the lid is not properly installed and is the same defect that caused recall of the product contained in Consumer Product Safety Commission Release #11-227, May 25, 2011.

41. Tina Blankenship's injury was directly caused by a failure of the Blade Safety interlock system and the circumstances of her accident exactly duplicated the conditions that led to injuries of other users of the GE Model 169203 Food Processor prior to April 26, 2013, the date of Ms. Blankenship's injury.

42. General Electric and Wal-Mart knew of the defect prior to the first, twenty-first and thirty-first weeks in 2010 (the build dates of the Locke, Neese and Graham units) and continued to manufacture, distribute and sell the food processor with full knowledge of its propensity to cause injury to users.

43. General Electric and Wal-Mart knew of the defect in the food processor that led to Tina Blankenship's injury one year before purchase of the unit and forty-eight months before her accident but failed to initiate a recall of the product in a timely manner.

### Opinions

44. The General Electric Model 169203 Food Processor that is the subject

## CONCLUSIONS AND OPINIONS (Contd.)

of this lawsuit was defective and unreasonably dangerous beyond the expectation of the ordinary purchaser and user.

45. The dangerous condition of the General Electric Model 169203 Food Processor that is the subject of the present lawsuit was the result of design and manufacturing defects that rendered the machine unreasonably unsafe for its intended purpose.

46. The dangerous condition of the General Electric Model 169203 Food Processor that is the subject of the present lawsuit was unreasonably unsafe for its intended purpose because it failed to include proper warnings to apprise the user that the Blade-Safety Interlock system was subject to failure, the consequences of such failure and how to avoid those consequences.

47. With the defects known to exist prior to and at the time of the CPSC recall, a responsible manufacturer would not have placed the subject General Electric Model 169203 Food Processor in the stream of commerce for purchase by the general public.

48 The defective condition of the subject food processor was the direct cause of Tina Blankenship's injury.

49. Present knowledge indicates that the subject food processor was substantially unchanged between the time of purchase and the time of Tina Blankenship's injury.

50. The behavior of General Electric and Wal-Mart in failing to suspend production of the Model 169203 food processor and institute an effective recall and removal of the product from the hands of consumers once the defect was known evidenced a reckless disregard and conscious indifference for the safety of users of the product.

Robert Jay Block, Ph.D., P.E.
Consulting Metallurgical Engineer